## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**THOSE CERTAIN UNDERWRITERS AT
LLOYD'S LONDON WHO SUBSCRIBE
TO POLICY NUMBER TCN 002547,**

                    **Plaintiff,**

**-vs-**                               **Case No.  6:10-cv-830-Orl-28GJK**

**KARMA KORNER, LLC, and TINA
HARRISON, individually and as
personal representative of the estate of
Zeric Harrison,**

                    **Defendants.**
_____

## ORDER

Plaintiff, Those Certain Underwriters at Lloyd's London Who Subscribe to Policy Number TCN 002547 ("Plaintiff"), brings this action seeking a declaratory judgment as to its obligation to defend and indemnify its insured, Karma Korner, LLC ("Karma Korner"), in connection with a state court lawsuit ("the Underlying Litigation") against Karma Korner.  In the Underlying Litigation, Karma Korner has been sued by Tina Harrison ("Ms. Harrison") for negligence based on its alleged failure to provide adequate security on its premises; that negligence allegedly resulted in the shooting death of Ms. Harrison's son.

The cause is currently before the Court on the Motion for Summary Judgment (Doc. 22) filed by Plaintiff.  Ms. Harrison has filed a Response (Doc. 26)[1] to the motion, and Plaintiff

_____

[1]Karma Korner has not made an appearance in this case, and a Clerk's Default has been entered against it.  (See Docs. 16 & 17).

has filed a Reply (Doc. 28).  Having considered the parties' submissions and pertinent law, the Court concludes that Plaintiff's motion must be granted.

## I.  Background

On October 27, 2007, Ms. Harrison's eighteen-year-old son, Zeric Harrison, was shot and killed in the parking lot of premises that was owned or operated by Karma Korner as a teen nightclub.  As alleged in the Amended Complaint filed in the Underlying Litigation, Zeric Harrison "saw a cap on top of a vehicle which he attempted to retrieve," and as he "was retrieving the cap, he was shot dead by an occupant of the vehicle upon which the cap was placed."  (Am. Compl. in Underlying Litigation, Attach. to Doc. 23, at 2).  The shooting is described in that Amended Complaint as "criminal activity," (id. at 4), and the shooter of Zeric was adjudicated guilty in state court of manslaughter with a firearm, (see Judgment, Attach. to Doc. 23).  Ms. Harrison alleges in the Underlying Litigation that Karma Korner was negligent in failing to provide adequate security for its customers and invitees.

Plaintiff had issued a commercial general liability policy ("the Policy") to Karma Korner with a policy period that included the date of the shooting.  According to Plaintiff's Complaint filed in this action, Karma Korner "has requested that [Plaintiff] defend and indemnify it for the claim asserted in the Underlying Litigation pursuant to the terms of the Policy."  (Doc. 1 at 8).  Plaintiff states that it is providing a defense to Karma Korner in the Underlying Litigation under a Reservation of Rights, (id.), and in this case it seeks a declaratory judgment that, inter alia,[2] the Policy does not provide coverage to Karma Korner because

---

[2]In its Complaint, Plaintiff sets forth four counts.  In Count I, Plaintiff seeks a

the Policy's assault and battery exclusion applies and that Plaintiff does not have a duty to defend or indemnify Plaintiff in connection with any claims in the Underlying Litigation.

## II.  Discussion

### A.  Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate 'in declaratory judgment actions seeking a declaration [as to insurance coverage] when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law.'"  TIG Ins. Co. v. Smart Sch., 401 F. Supp. 2d 1334, 1337 (S.D. Fla. 2005) (quoting Northland Cas. Co. v. HBE Corp., 160 F. Supp. 2d 1348, 1358 (M.D. Fla. 2001)).  "In a declaratory judgment action, 'if the allegations in the complaint alleging a claim against the insured either are acts not covered by the policy or are excluded from the policy's coverage, the insurer is not obligated to defend or indemnify.'"  Id. (quoting Northland, 160 F. Supp. 2d at 1357-58).

---

declaratory judgment that the Policy is void due to misrepresentations made by Karma Korner in its application for the Policy.  In Count II, Plaintiff seeks a declaration that the assault and battery exclusion in the Policy bars coverage.  In Count III, Plaintiff seeks a declaration that the Policy does not provide coverage because Karma Korner did not comply with the Policy's notice requirements.  In Count IV, Plaintiff seeks rescission of the Policy based on Karma Korner's alleged misrepresentations.  Plaintiff seeks summary judgment only with regard to Count II, which pertains to the assault and battery exclusion.  The ruling in Plaintiff's favor on this count disposes of the case.  (See Doc. 22 at 11).

B.  Principles of Insurance Contract Interpretation

"The interpretation of an insurance contract is a question of law." Kattoum v. N.H. Indem. Co., 968 So. 2d 602, 604 (Fla. 2d DCA 2007).  It is undisputed that Florida law governs the interpretation of the insurance policy at issue here.  "Florida law provides that insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000).  "The scope and extent of insurance coverage is determined by the language and terms of the policy." Bethel v. Sec. Nat'l Ins. Co., 949 So. 2d 219, 222 (Fla. 3d DCA 2006).

"If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous." Auto-Owners, 756 So. 2d at 34.  "Ambiguous policy provisions are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy.  Likewise, ambiguous insurance policy exclusions are construed against the drafter and in favor of the insured.  In fact, exclusionary clauses are construed even more strictly against the insurer than coverage clauses." Id.  (citations omitted).

C.  The Merits of Plaintiff's Motion

The exclusion at issue provides:

### EXCLUSION—ASSAULT AND BATTERY

This insurance does not apply to any claim arising out of an assault and/or battery or out of any act or failure to act to prevent or suppress an assault and/or battery whether caused by the insured, an employee, a patron, or any other person.

This exclusion applies to all causes of action arising out of an assault and/or battery including, but not limited to, allegations of

-4-

> negligent hiring, placement, training, or supervision, or to any
> act, error or omission relating to an assault and/or battery.

(Policy, Ex. D to Doc. 4).  Plaintiff argues that the shooting of Zeric Harrison clearly falls within this assault and battery exclusion and that therefore the claims against Karma Korner in the Underlying Litigation are not covered by the Policy and do not trigger a duty on the part of Plaintiff to defend or indemnify.  Ms. Harrison, however, urges that there is no definition of battery in the Policy, that this lack of a definition renders the Policy ambiguous, that it is unclear whether "assault and battery" includes manslaughter—the crime of which the shooter was convicted—and that Plaintiff should thus not be granted summary judgment on this issue.  As set forth below, Ms. Harrison's arguments are rejected, and Plaintiff has established entitlement to summary judgment in its favor with regard to the applicability of the assault and battery exclusion.

It is undisputed that the Policy does not define "assault and battery."  However, the failure of the Policy to define "assault and battery" does not mean that the Policy must be construed to afford coverage.  As correctly noted by Plaintiff, "'ambiguity is not invariably present when a contract requires interpretation,'" and "the 'mere failure to provide a definition of a term involving coverage does not necessarily render the term ambiguous.'"  Cont'l Cas. Co. v. Wendt, 205 F.3d 1258,1262 (11th Cir. 2000) (quoting Gas Kwick, Inc. v. United Pac. Ins. Co., 58 F.3d 1536, 1539 (11th Cir. 1995), and State Farm Fire & Cas. Co. v. Metro. Dade Cnty., 639 So. 2d 63 (Fla. 3d DCA 1994)).  Instead, "'[a]bsent a definition of a term in a document or policy, [courts] may utilize the plain and generally accepted meaning of the term.'"  Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc., 420 F.3d 1317, 1327

-5-

n.6 (11th Cir. 2005) (quoting Bohrer v. Church Mut. Ins. Co., 965 P.2d 1258, 1263 (Colo. 1998)).

The tort of "[b]attery consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." Quilling v. Price, 894 So. 2d 1061, 1063 (Fla. 5th DCA 2005). Similarly, the crime of battery is defined by statute in Florida as "occur[ring] when a person: 1. Actually and intentionally touches or strikes another person against the will of the other; or 2. Intentionally causes bodily harm to another person." § 784.03(1)(a), Fla. Stat. Commission of a battery with a deadly weapon elevates the crime to "aggravated battery," id. § 784.045(1)(a), but the act is still a battery. It would make no sense to construe this insurance policy as excluding claims arising from simple batteries but not claims arising from batteries committed with a deadly weapon such as a firearm.

Alternatively stated, even though an insurance policy is considered ambiguous "[i]f the relevant policy language is susceptible to more than one reasonable interpretation" Auto-Owners, 756 So. 2d at 34, Ms. Harrison's proposed interpretation—construing "assault and battery" as not encompassing the shooting of Zeric Harrison as alleged in Ms. Harrison's complaint in the Underlying Litigation—is not reasonable. The assault and battery exclusion plainly includes the events alleged here; there is no suggestion that Zeric was negligently shot, and in her response papers Ms. Harrison refers to Zeric as having been "murdered," (see Doc. 26 at 4).

Case law supports this result. In Carter v. Adams, 877 N.E.2d 1015 (Ohio Ct. App. 2007), a case involving very similar circumstances, the insured made the same argument

that Ms. Harrison makes here, and the court rejected it out of hand.  In that case, a man was shot several times outside a bar, survived, and sued the bar's owner.  The bar's insurer refused to defend and denied coverage, citing the assault and battery exclusion of the policy. As explained by the court:

> [The insured] concedes that, under the criminal law, assault and battery would encompass the use of a firearm.  But [the insured] argues that [the shooting victim's] injuries did not arise from an "assault" or "battery" as a layperson would understand those terms.
>
> To give the reader a better understanding of [the insured's] argument, we quote directly from its brief: "The plain and ordinary meaning of the term assault and battery to a layperson, however, would encompass a physical attack on another without the use of a firearm.  Thus, under the naturally and commonly accepted use of the term assault and battery, the exclusion should not apply insofar as a common usage of the term assault and battery does not encompass the use of a firearm where one individual shoots another individual at a distance of several feet."
>
> According to [the insured's reasoning], if [the victim's] injuries had resulted from a fistfight, rather than from a close-range multiple shooting, then [the victim] could be said to have been assaulted or battered—but the assailant's use of a firearm instead of his fists meant that he neither "assaulted" nor "battered" [the victim].  To so rule would be to indulge in pure pettifoggery.
>
> . . . Under any definition of the words, an "assault" and "battery" occurred.

Id. at 1018.  Other cases have similarly held that a shooting death is an "assault and battery" for the purpose of application of an assault and battery exclusion in a liability policy.  See First Specialty Ins. Corp. v. Flowers, 644 S.E.2d 453 (Ga. Ct. App. 2007) (reversing denial of summary judgment to insurer and finding that assault and battery exclusion clearly applied and barred coverage for claim arising from shooting death); Mallar v. Penn-Am. Ins. Co., 837

A.2d 133 (Me. 2003) (affirming summary judgment for insurer, holding that assault and battery exclusion barred coverage of claim for emotional distress of witness to fatal shooting).

In sum, Ms. Harrison's proposed construction of the assault and battery exclusion as not including the shooting that is described in her own state court complaint as "criminal activity" and in her response papers as "murder" is not reasonable and is rejected. Under a straightforward, common sense reading of the exclusion, there is no coverage under the Policy for claims "arising out of" a shooting death such as the one at the root of this case. Thus, the Policy does not provide coverage for the claim at issue, and Plaintiff has no duty to defend or indemnify its insured, Karma Korner, on the claims in the Underlying Litigation.

### III.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  The Motion for Summary Judgment (Doc. 22) filed by Plaintiff is **GRANTED**.

2.  Based on the "assault and battery exclusion" to the Policy, the Policy does not provide coverage for the claims against Karma Korner in the Underlying Litigation, and Plaintiff has no duty to defend or indemnify Karma Korner in connection with the claims asserted in the case of <u>Harrison v. Karma Korner, LLC et al.</u>, Case No. 2009-CA-315-5-O in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida.  Thus, Plaintiff prevails on Count II of its Complaint.  As noted by Plaintiff, this ruling disposes of the entire case and obviates the need to address the other counts.

3. The Clerk is directed to lift the administrative closure of this case, enter a judgment

in favor of Plaintiff in accordance with this Order, and close this file.

**DONE** and **ORDERED** in Orlando, Florida this 28th day of March, 2011.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record